# UNITED STATES DISTRICT COURT

for the

Western District of Michigan

Southern Division

|  |  |
|---|---|
|  | Case No. _____25-321_____ |
| LOREN JANE OWENS | Honorable: |
| *Plaintiff* |  |
| **-v-** |  |
|  | JURY TRIAL DEMANDED |
| **Port City Associates Group Corporation, City2Shore Real Estate Inc. Steve Frody, Shelley Frody, Kellen Keck, and Emmersyn Sheak.** |  |

## COMPLAINT AND REQUEST FOR INJUNCTION

Plaintiff Loren Owens ("Plaintiff" or "Owens"), by and through her attorney, alleged the following upon personal knowledge as to Plaintiff acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorney, against Port City Associates Group Corporation (Defendant PCAGC") City2Shore Real Estate Inc. ("Defendant City2Shore REI" or "City2Shore" ), Defendant Kellen Keck, Defendant Steve Frody ("Defendant

Fordy"), Defendant Shelley Frody Defendant Emmersyn Sheak ("Defendant Sheak "), and Defendant Does 1-10 ("Doe Defendants")

## **INTRODUCTION**

1. This action arises out of the offensive marketing practice Port City Associates Group Corporation, Defendant City2Shore REI, Defendant Steve John Frody, Defendant Shelley Renee Frody, Kellen Keck and Defendant Emmersyn Sheak sent unwanted text message and placed a call to the Plaintiff on March 8, 2025. By falsely claiming that the Plaintiff was interested in a property in Michigan. Violating the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq.* and the TCPA's corresponding regulations the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, et seq., the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, et seq., for the Defendants own gain. The Defendants sent the text message and made the call to individuals who had previously requested not to be called by placing her number on the federal do not call list. Defendant Keck, stated that "We ran him though our Forrewarn App Sunday March 9, 2025" committing Civil Stalking of Ms. Owens and her attorney.

## **PARTIES**

2. Plaintiff Loren Owens is a natural person of the age of majority, a citizen of the United States, and a resident of Clinton County, State of Michigan.

3. Upon Information and belief, Defendant City2Shore Port City Associates, and at all times herein mentioned, was a Michigan Corporation headquartered in the State of Michigan doing business under the name "City2shore Port City Associates" with its principal place of business at 548 76th Street SW, Bryron Center, MI 49312 and doing business in the State of Michigan (hereinafter referred to as

"City2Shore PCA"). City2Shore PCA is a Real Estate Broker Company with License number 6502424128 Licensed in the State of Michigan.

4.    Upon Information and belief, Defendant City2Shore Real Estate Inc is, and at all times herein mentioned was, a Michigan Corporation headquartered in the State of Michigan doing business under the name "City2shore Realestate-Northern Michigan," "City2shore Realestate – Prestige Homegroup," and "City2shore Holdings, LLC" with its principal place of business at  6501 Balsam Dr, Hudsonville, MI 49426 and doing business in the State of Michigan (hereinafter referred to as "City2Shore REI" and/or "City2Shore"). City2shore REI is a Real Estate Broker Company with License number 6505366343 licensed in the State of Michigan.

5.    Defendant Steve Frody ("Defendant Frody"), Defendant Emmersyn Sheak ("Defendant Sheak "),  and Defendant Does 1-10 ("Doe Defendants")

6.    Upon Information and belief, Defendant Steve John Frody is a natural person of the age of majority, a citizen of the United States, is mentally competent, is not in the military, residing at 6465 Balsam Dr, Hudsonville, MI 49426,  and a resident of Ottawa County, State of Michigan—Defendant Steve Frody (hereinafter referred to as "Defendant  Mr. Frody").  Defendant Mr. Frody is one of the Principal Associate Brokers for City2shore REI, a Real Estate Broker Company, with License Number: 6502366345 on file with the State of Michigan.

7.    Upon Information and belief, Defendant Shelley Renee Frody is a natural person of the age of majority, a citizen of the United States, is mentally competent, is not in the military, residing at 6465 Balsam Dr, Hudsonville, MI 49426,  and a resident of Ottawa County, State of Michigan—Defendant Shelley Renee Frody (hereinafter referred to as "Defendant  Mrs. Frody").  Defendant Mrs. Frody is one of the Principal Associate Brokers for City2shore REI a Real Estate Broker Company with License number 65022366344 on file with the State of Michigan.

8.   Upon Information and belief, Defendant Kellen Keck is a natural person of the age of majority, a citizen of the United States, is mentally competent, is not in the military, residing in Ottawa County, Michigan and a resident of Ottawa County, State of Michigan—Defendant Keck is a licensed Real Estate Broker on file with the State of Michigan under License Number 6502424128 and 6502432670.

9.   Upon Information and belief, Defendant Emmersyn Natalie Sheaks is a natural person of the age of majority, a citizen of the United States, is mentally competent, is not in the military, residing in Manistee, Michigan, and a resident of Manistee County, State of Michigan—Defendant Emmersyn Natalie Sheaks (hereinafter referred to as "Defendant Sheaks").  Defendant Sheaks is a licensed Real Estate Salesperson on file with the State of Michigan under License Number 6501451220.

10.  Upon Information and belief, DOE DEFENDANTS 1-10 are fictitious names of individuals, businesses, lead generators or brokers, and/or telemarketers that Plaintiff Alleges for the purpose of substituting names of defendants whose identities are unknown but may be disclosed in discovery and should be made parties to this action. Specifically, Plaintiff has information and belief that John Does violated that TCPA.

11.  At all times relevant hereto, while conducting business in Michigan, Defendants have been subject to, and required to abide by, the laws of the United States and the State of Michigan, which included the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, et seq., and related regulations ("TCPA Regulations") that are set forth at 47 U.S.C. § 64.1200, as well as the opinions, regulations and orders issued by Courts and the Federal Communication Commission ("FCC") implementation regulations and enforcing the TCPA and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, et seq., the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, et seq.

12. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).

13. At all times herein mentioned, each employee, representative, officer, director, consultant, or contractor of any Defendant acted as its agent.

## JURISDICTION AND VENUE

14. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., which is a federal statute.

15. This court has limited personal jurisdiction over the Defendant pursuant to M.C.L. § 600.715 as a result of the defendant transacting any business within the state and/or doing or causing any act to be done, or consequences to occur in the state resulting in an action for tort.

16. This Court has jurisdiction over Defendant because it specifically commissioned telemarketing calls, including the calls to Plaintiff, to be sent to Michigan consumers, causing harm there, and it does business itself in Michigan.

17. This Court has supplemental jurisdiction over all Plaintiff's Michigan and common law claims under 28 U.S.C. § 1367(a) because they are so related to the TCPA claims in this action that arise under the Court's original jurisdiction that they form part of the same case or controversy under Article III.

18. Upon information and belief, Defendant continuously and systematically placed unsolicited phone calls to consumers in the Western District of Michigan, using phone numbers from the "231" area code.

19.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telemarketing tortious or illegal unwanted telephone calls at issue were sent into the Western District of Michigan where the Plaintiff's cell/wireless phone was located.

## INTRODUCTION

20.  In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law to protect consumers' privacy rights, specifically, the right to be left alone from unwanted telemarking calls.

21. As the Supreme Court of the United States of America stated, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." Barr v. Am. Ass'n of Political Consultants, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

22.  Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

23.  Advancements in telephone dialing technology, voice over internet protocol ("VoIP") phones, and the movement away from per-call, per-minute billing made mass calling to consumers by

telephone simple, easy, and cost-effective.  This advancement in technology and software has caused an angering amount of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumers' time, electricity, phone service, and money.

> "The FTC also continues to track how technology affects the Registry and the consumers and telemarketers who access it.  Advancements in technology have made it easier for bad actors to place illegal calls.  For example, Voice over Internet Protocol (VoIP) technology allows callers, including law-breakers, to make higher volumes of calls inexpensively from anywhere in the world.  Technological developments also allow illegal telemarketers to easily fake, or "spoof," the caller ID information that accompanies their calls, which allows them to conceal their identity from consumers and law enforcement.  Further, many telemarketers use automated dialing technology to make calls that deliver prerecorded messages (commonly referred to as "robocalls"), which allow violators to make very high volumes of illegal calls without significant expense.  The net effect of these technological developments is that bad actors who refuse to comply with the Registry or other telemarketing laws, are able to make more cheap and illegal telemarketing calls using methods that make it difficult for the FTC and other law enforcement agencies to find them."  Federal Trade Commission, Biennial Report to Congress, Under the Do Not Call Registry Fee Extension Act of 2007 for Fiscal Years 2022 and 2023, (2023).

24. As a result, the federal government and several states have enacted legislation to attempt to stop these widespread telecommunications abuses. As Congress Recognized:

> "Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion."  Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

25. The FTC issued its Biennial Report to Congress on the National Do Not Call Registry in the Fiscal year 2023. The FTC received over 2.1 million companies for violations of the Do-Not-Call Registry.

26. According to the online robocall tracking service "YoMail," In America, there were just over 55 billion robocalls in 2023.  www.robocallindex.com (last visited May 23, 2024).

27. According to the online robocall tracking service "YoMail," for March 2024, in the United States, there were 4.3 Billion robocalls made, with an average of 137,500,000 per day or 5,700,000 per

hour, 1,600 calls per second, or 13 calls per person—https://robocallindex.com/2024/march (last visited May 23, 2024).

28. According to online robocall tracking service "YoMail," for March 2024, in the 269 area code alone, there were 8.4 Million robocalls made, with an average of 270,400 per day or 11,300 per hour, 3.1 calls per second, or 10 calls per person with a 269 area code—https://robocallindex.com/269/2024/march (last visited May 23, 2024).

29. As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated. 47 U.S.C. § 227(b)(3).

30. Defendants caused prerecorded calls to be made to Plaintiff's cell phone without her consent, and Plaintiff files this complaint on behalf of herself, seeking relief from Defendants' illegal calling practices.

## BACKGROUND ON THE TCPA

31. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

32. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5).

33. The National Do Not Call Registry allows consumers to register their telephone numbers, indicating their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

34. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the consumer or the telephone number cancels, the registration is removed by the database administrator." Id. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R.§ 64.1200(c)(2).

## BACKGROUND ON THE MHSSA

35. The Michigan Home Sale Solicitation Act (Public Act 227 of 1971) did not include telephone sales, but it was amended in 1978 specifically to include them.

36. The Michigan Legislature, seeing problems with the Federal do-not-call list, modified the Michigan Home Sale Solicitation Act (Public Act 227 of 1971). With House Bill 4154 "would require telephone solicitors to give certain information about themselves and the company they worked for and would prohibit the intentional blocking of caller ID."

37. The Committee on Energy and Technology Bill Analysis of several proposed bills in the 2001 legislative session stated:

> "Despite existing federal and state laws regulating telemarketing, many people still feel that their rights to privacy and freedom from unsolicited telephone intrusions into their homes are not adequately protected by these laws. Existing laws not only allow numerous exemptions to telemarketers (despite the fact that it does not matter to most people who actually makes the unwanted telemarketing call or for whom) but also allow such calls to be made between 8:00 a.m. and 9:00 p.m. This means, in practice, that many people are interrupted by unsolicited telemarketing calls[.]" https://www.legislature.mi.gov/documents/2001-2002/billanalysis/House/htm/2001-HLA-4042-A.htm

38. The Committee on Energy and Technology Bill Analysis found that the overall package of bills "would balance citizens' rights to privacy and freedom from unsolicited telephone solicitation with businesses' free speech rights."

39. The Michigan legislature passed amendments to the MHSSA in 1998, 2002, and 2009 to help stem the tide of unwanted calls to consumers.

## FACTUAL ALLEGATIONS

40. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

41. Plaintiff's telephone number, (269) XXX-5526, is a non-commercial telephone number not associated with any business.

42. Plaintiff's telephone number is used for personal residential purposes.

43. The Plaintiff's telephone number has been listed on the National Do Not Call Registry since June 7, 2019. (Exhibit 1)

44. Plaintiff's residential cellular telephone line is listed on the federal do not call list. Yet, she is getting phone calls and text messages trying to sell everything from automotive warranties, health insurance, credit cards, selling your home, and more.  There are scam calls claimed to be from the Customs and Board Patrol, the Sheriff's Department, and the Social Security Administration.

45. Plaintiff has received over 60 calls in one day from telemarketers and 132 calls in 2 days.

46. The Plaintiff has even had her phone number spoofed, so when people call her and say she just called them, they get upset and mad and want to know why she called them.

47. In January 2021, Plaintiff was admitted to the hospital with a loss of pregnancy via stillbirth.

48. She was admitted to the hospital for two days, and during that time, her phone was ringing off the hook because an unknown bad actor spoofed her phone number.

49. People were calling and yelling at her and her family about calling their phones when she had not called anyone and was suffering one of the most significant losses of her life: her child.

50. By listing her residential and cellular telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations, robocalls, or text messages at her phone number.

51. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint and suffered the nuisance and invasion of her privacy.

52. Plaintiff only has one cell phone number that she uses.

53. Plaintiff has never been a customer of any of the Defendant PCAGC,  Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Ms. Sheaks, and has never consented to receive calls or text messages from any Defendant.

54. Plaintiff has never solicited or contacted Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck or Ms. Sheaks online, in person, or on any social media platform.

55. At no time has Plaintiff provided permission to Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, or Ms. Sheaks to contact her via telephone or text message

56. The Plaintiff is not currently looking for or has she, in the past three years, looked at buying real estate.

57. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers who initiate calls to market the seller's products or services, declaring as follows:

"[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

58. For every call alleged herein initiated to Plaintiff's telephone line, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, or Ms. Sheaks and Doe Defendants 1-10 caused an injury in the form of a nuisance and annoyance to Plaintiff. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

59. Each call placed without consent by Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck or Ms. Sheaks or their agents alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

60. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, or Ms. Sheaks are in the business of selling real estate.

61. Upon Information and belief, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Mr. Keck employ "agents" Defendants Sheaks, and (Doe Defendants) who market and attempt to sell real estate to consumers.

62. Upon Information and belief, an agent like Defendant Sheaks can earn a commission through a compensation plan of 5% to 6% of the home sale price.

63. Upon Information and belief, Mr. Frody, Mrs. Frody, and Mr. Keck are Real estate Brokers also get a part of the commission.

64. Upon Information and belief, in addition to providing telemarketing leads, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody and Mr. Keck, its agents with access to automated telephone dialing software/platforms and services that allow the Defendants

Sheaks and Doe Defendants to contact consumers to sell Defendant PCAGC,  Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck listed properties. These automated telephone dialing platforms use a random number or sequential number generator and have the capacity to call people at random with no human involvement.

65. Upon Information and belief, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, and Mrs. Frody are well aware that the automated dialing platforms and telemarking activities that it directs its agent to use are illegal and violate the TCPA when calls are placed to phone numbers on the Federal Do-Not-Call list.

66. Defendants Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, and Mrs. Frody, other lead generators had defendants Defendant PCAGC, City2Shore REI, Defendant Mr. Frody,  Mrs. Frody, and Mr. Keck express (or, at the very least, implied) actual authority to place the non-consensual, automated lead generation calls at issue. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Mr. Keck, contracted with agents like Defendant Sheaks and lead generators to effectuate the marketing.  Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody,  Mrs. Frody, Mr. Keck, know that its agents, vendors, and sub-vendors like Defendant Sheaks generate business on its behalf through illegal telemarking but inexplicably keep accepting business derived through the illegal calls anyway.

67. Defendant Defendant PCAGC, City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Mr. Keck imbued agents, lead generators, and telemarketers making calls to try to sell their products and services, including Defendant Sheaks, with apparent authority for the calling at issue by permitting its agents, lead generators and telemarketers' authority to use its tradename, trade-dress and providing proprietary pricing and product information for use during such calls.

68. Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks ratified the calling at issue: it knowingly accepted the benefits of their lead generators' nonconsensual, automated calling, including the benefits of advertising its real estate sales.

69. Upon Information and belief, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, the Agents Defendant Sheaks, are all aware of the illegal tactics being used by their contracted lead generators or Doe Defendants. Still, they are deliberately indifferent to what is occurring to be able to represent that they are "unaware" of the illegal telemarketing conduct.

70.  Upon Information and belief, Because the telemarketers, lead generator, and Doe Defendants engage in such deceptive practices designed to conceal their actual identities, Plaintiff has had to engage in various methods to identify the sources of the telemarketing calls and text being received.

71. As discovery progresses in this case and Plaintiff is able to learn the identity or identities of the lead generators, and doe Defendants that Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody Mrs. Frody, Mr. Keck and Defendant Sheaks have utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the call centers as additional named defendants are uncovered.

72. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck Defendant Sheaks contracted with Doe Defendants to place calls to benefit themselves and start the conspiracy. But for the request of  Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Defendant Sheaks for Doe Defendants, Plaintiff would have never been called One Hundred and thirty-three times.

73. On information and belief, in each instance of Defendant PCAGC,  Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks transmitted or caused to be

transmitted unsolicited phone calls themselves or had a high degree of involvement/knowledge in the transmitted phone calls.

74. Upon information and belief, Plaintiff received a Text Message on March 9, 2025, at 11:28 AM stating: "Hi thanks for requesting property info on our site. Just curious, are you actively searching for a property… or just browsing right now?—Emmersyn Sheaks City2shore Real Estate Reply STOP to unsubscribe.



Exhibit 2

From Defendant Sheaks on behalf of Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, acting through one or more authorized agent(s), knowingly and/or willfully initiated auto-dialed calls and texts with pre-recorded messages to the Plaintiffs Residential Cell Phone number for commercial purposes of selling real estate the calls and text were initiated without the Plaintiff's prior express consent, permission, or invitation.

75. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks, through their agents Doe Defendants caused and knew the text and calls were a pattern of conduct composed of a series of two or more separate noncontinuous acts evidencing a continuity of purpose as a course of conduct.

76. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and Defendant Sheaks, through their agents Doe Defendants, knew that a reasonable person would suffer mental distress for having their phone ring non-stop during the day.

77. Defendant Sheacks placed a phone call to Plaintiffs cell phone on March 8, 2025 at 2:22 PM.



Exhibit 3

78. Defendant Shakes and her husband (John Doe 1), placed a phone call, initially blocking the caller ID information on March 9, 2025, at 7:45 PM.  This was done after Plaintiff Owens texted Stop on March 9, 2024, at 4:52 PM.

Exhibit 4

79. The Plaintiff has suffered mental distress from the calls calling her repeatedly.

80. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks, through their agent Doe Defendants, knew or should have known the repeated and continuous harassment of Plaintiff would cause a reasonable person to feel terrorized, threatened, frightened, intimidated, harassed, and molested.

81. On information and belief, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and Defendant Sheaks, and their agents/Doe Defendants knew or should have known that the phone call marketing campaign was a telephone solicitation subject to the TCPA.

82.  To this day, the Plaintiff is still getting calls and text messages trying to sell her real estate, and the contact will not stop.

83. As a direct and proximate result of said conduct, Plaintiff has sustained damages. Under the TCPA, Plaintiff is entitled to injunctive relief enjoying Defendant's unlawful conduct, as well as incidental, statutory damages.

84. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks, and Doe Defendants knew that Plaintiff had not authorized the phone calls by prior express invitation or permission.

85. On March 9, 2025, without Plaintiff's prior express consent, permission or invitation, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Defendant Sheaks, through one or more authorized agent(s)/DOE defendants, knowingly and/or willfully initiated an auto-dialed text message calls with pre-recorded messages to Plaintiff's Residential Telephone Number for the commercial purpose of selling Real Estate and thereby also the product and services of all Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Defendant Sheaks. All these calls were initiated without the Plaintiff's prior express consent, permission, or invitation.

    a.   Doe Defendants knowingly and/or willfully:

        i.   Called without Plaintiff's prior express consent, permission, or invitation.

        ii.   Used pre-recorded messages.

## HARMS TO THE PLAINTIFF

86. These calls harmed the Plaintiff, who was temporarily deprived of the legitimate use of her phone because the phone line was tied up, and her privacy was improperly invaded.

87. Moreover, these calls injured the Plaintiff because they were annoying, obnoxious, frustrating, intrusive, harassing, and terrorizing, a nuisance that disturbed her solitude at work, on her way home, and at home.

88. The calls further injured the Plaintiff by draining the battery on her iPhone and Apple Watch. Each call caused her phone to vibrate and alert her by illuminating the screen, causing increased electricity use and draining her battery.

89. Using the battery for so many calls in a short time also limits the battery's useful life for both the iPhone and Apple Watch.

90. In regard to each of the above-described calls and text to Plaintiff's residential cell phone,

    a. Each call was a "telephone solicitation," as this term is defined in 47 U.S.C. § 227(a)(4);

    b. Each call was an "unsolicited advertisement," as this term is defined in 47 U.S.C §. 227(a)(5);

    c. Each call was initiated for the purpose of encouraging the purchase or rental of or investment in property, goods, or services, and, therefore, each was a "telephone solicitation" as defined in 47 U.S.C. § 227(a)(4).

    d. Each call was initiated by, for, at best or request on behalf of with the approval of, and/or for the benefit of Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr, Keck, and Defendant  Sheaks.

    e. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks cooperated in, directed, authorized, requested, aided, encouraged, approved, paid for ratified and/or adopted the actions of any and Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks or Doe Defendant's agents initiating each call.

91. In contracting with their agents, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody caused to be initiated and placing the call and text message to the Plaintiffs Residential Cellular Telephone Number, Defendants acted intentionally, knowingly, willfully, consciously, deliberately, and purposefully with a common plan, scheme, and/or design and for the Defendant's individual, mutual, and shared benefit.

92. Plaintiff pleads on information and belief that the officers, managers, and employees for Defendant PCAGC, Defendant City2Shore REI, knew about the illegal telemarking calls as alleged above and, in fact, ordered such calls to be made.

93. Additionally, Plaintiff pleads on information that Defendant PCAGC, City2Shore REI knew its agents  Defendants Sheaks, and Doe Defendants had been accused of making illegal telemarking calls as they have had complaints filed against them for the same conduct.

94. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck failed to properly supervise or monitor Defendant Sheaks, and Doe Defendants despite having actual knowledge of other violations of the TCPA by Doe Defendants.

95. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendants, Sheaks, and Doe Defendants owed a duty of care to make sure they were not calling people who were registered on the do-not-call-list and had not consented in writing to the phone call.

96. Plaintiff, by placing herself on the do-not-call list, placed a notice for all the world to know not to call her for telephone solicitation. had Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and Defendant Sheaks scrubbed their call list against the federal do-not-call list, the harm would not have occurred.

97. Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks, and Doe Defendants breached that duty in allowing their agents, Doe Defendants, to call and text Plaintiff.

98. Plaintiff pleads on information and belief that to the extent Defendant PCAGC, Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody Mr. Keck, and Defendant Sheaks uses any Doe Defendants agents to make calls, Defendant PCAGC, Defendant City2Shore REI, Defendant Mr.

Frody, and Mrs. Frody has ordered their agent to make the illegal telemarking calls to residential numbers on the National "Do-Not-Call" registry for its benefit to boost its sales.

99. Plaintiff pleads on information and belief that to the extent Defendant PCAGC,  Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Doe Defendants agents to make calls, Defendant City2Shore REI knew or reasonably should have known (implied agency) that its agents were making the illegal calls to residential numbers on the National "Do-Not-Call" registry.

100.    Plaintiff pleads on information and belief that to the extent Defendant City2Shore REI, Defendant Mr. Frody, Mrs. Frody uses any agents to make calls, Defendant City2Shore explicitly hired by such agent in order to make the illegal telemarking calls to numbers on the National "Do-Not-Call" Registry for the benefit of Defendant City2

### ACTUAL HARM & WILLFUL AND KNOWING CONDUCT

101.    The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a previously established business relationship.

102.    Defendant PCAGC, Defendants City2Shore REI, Mr. Frody, Mrs. Frody, Mr. Keck, and Sheaks, by and through their agents/Doe Defendants, have intentionally and willfully violated the TCPA in an attempt to sell real estate.

103.    Plaintiff has been harmed by the junk calls complained of herein by the direct waste of her time during the call itself, the indirect waste of time in having to break from other important tasks, including conducting mental health assessments and spending time catching up after the junk call, the waste of telephone service which she and not any of the Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

104.    During each of Doe Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for her own personal or business reasons and was blocked from doing so by the line being tied up by Doe Defendants.

105.    As a proximate result of these intrusions, Plaintiff suffered an invasion of her privacy because the call should never have been transmitted to her. Doe Defendants rang her private phone at her private residence, in her private car, and while at work on her phone and watch.

106.    Plaintiff alleges on information and belief that Doe Defendants intentionally made the calls described above, in the sense that the number called was the one they meant to call in pitching their services and membership to meet quotes or lead generation goals of the Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Defendant Sheaks.

107.    Plaintiff alleges on information and belief that Doe Defendants made the repeated calls to terrorize, intimidate, harass, or molested to get the Plaintiff to say yes to whatever Doe Defendants were selling to get the terrorizing and harassing calls to end.

108.    Plaintiff has been damaged by the calls. Their privacy was improperly invaded, the Doe Defendants' calls were temporarily seized and trespassed upon the use of her phone, and she was forced to divert attention away from other activities to address the calls. Defendants' calls were annoying and a nuisance and wasted the time of Plaintiff and the class. See, e.g., Mims v. Arrow Fin. Servs., Inc., 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

109.    Plaintiff attempted to settle the matter before litigation and sent a demand and cease and desist letter on March 9, 2025, via email, through her attorney.

**ILLEGAL CIVIL AND CYBERSTALKING**

110.    Plaintiff has come to learn that Defendant PCAGC, Defendant Keck, and Defendant

Sheaks ran Plaintiff and Plaintiff's counsel though the Forwarn App. (Exhibit 6).

111.    Plaintiff nor her attorney were "unknown real estate prospect. " (Exhibit 9)

112.    Plaintiff nor her attorney need to have it determined

       i.   They where who they say they are

       ii.   Presents a possible risk to their safey, or

       iii.   Is a potential fraudster.

113.    By running Plaintiff and her attorney though the FOREWARN app, this violated the

FOREWARN Terms and Conditions. (Exhibit 9).

114.    Defendant PCAGC, Defendant Keck, and Defendant  Sheaks violated the subscriber

terms of service for the FORERWARN app. (Exhibit 10)

115.    Defendant PCAGC, Defendant Keck, and Defendant  Sheaks used the FOREWARN

app for an illegal purpose to stalk and get the true address of both Plaintiff and her attorney.

116.    The plaintiff has in the past been a victim of stalking by a prior partner and has had to

seek prior restraining orders.

117.    Plaintiff has suffered a breach of her privacy, Defendant PCAGC, Defendant Keck,

and Defendant  Sheaks  had no permissible use to seek this information.

### THIRD-PARTY ACCESS TO PLAINTIFF'S DATA

118.    Plaintiff has learned that Defendant Sheaks has shared confidential private data from

her employment with her Husband (Defendant John Doe 1).

119.    Upon Information and Belief Plaintiff believes that Defendant Sheaks shared Plaintiff

Name, Phone Number, address, and other information with Defendant John Doe 1.

120.    Upon Information and Belief Plaintiff believes that Defendant Sheaks shared other

information with her husband, Defendant John Doe 1.

121.    Only though Discovery will Plaintiff know the extent of the information that has been compromised by Defendant Sheaks.

122.    Defendant Sheaks entered the led as "Crock PSYCHO" (Exhibit 7).

123.    Defendant Keck updated the phone number last name from "Crocker PSYCHO" to "Crocker DNC" in Defendant PCAGC and Defendant City2shore REI led tracking system powered by BoldTrail. (Exhibit 7)

124.    Upon Information and Belief, Defendant Keck shared with third parties Julie Rietberg on March 10, 2025,  at 11:07:18 who works at Greater Regional Alliance of Realtors.

125.    Defendant Keck even made a video showing how he cyberstalked.

126.    Upon Information and belief, this video has been showed to several people.

127.    Upon information and belief, this has been posted on the GRAR Facebook member site.

### DEFENDANT PCAGC, DEFENDANTS CITY2SHORE REI, DEFENDANTS MR. FRODY, MRS. FRODY, and MR. KECK ARE VICARIOUS LIABILITY

128.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397¶ 13 (1995).

129.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations

130.    The FCC has instructed that sellers such as City2Shore may not avoid liability by outsourcing telemarketing to third parties, like lead generators.

> "[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would

> leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers suing one of a few of them is unlikely to make a substantive difference for consumer privacy"

In re DISH Network, LLC, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

131.     In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

132.     Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Sheaks are liable for telemarking calls and text messages placed by Doe Defendants to generate customers for them.

133.     Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck,  Authorized Agents like Defendants Sheaks make calls or hire telemarketers using their websites, intellectual property, such as trademarks and trade dress.

134.     On information and belief, Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck control the day-to-day activities of Defendants Sheaks, including having them accept an end-user license agreement governing the use of Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody,  Mrs. Frody, Mr. Keck system, which includes

monitoring, logging, and use of the system Agents' access to private trade information, including pricing and other trade secrets.

135.    Upon information and belief, Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks did not restrict any Doe Defendants from contacting numbers on the National Do Not Call Registry, even though it could have.

136.    Upon information and belief, Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody Mrs. Frody, Mr. Keck, and Sheaks did not restrict any Doe Defendants do not require the leads to be recent or to check that the lead name matches the owner or user of the number called.

137.    Upon information and belief, Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody,  Mr. Keck, and Sheaks provided specific criteria for the leads they would accept and required their vendors to adhere to those criteria.

138.    Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, knew or reasonably should have known that Defendant Sheaks and Defendant Does  were violating the TCPA on their behalf, but Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks failed to take effective steps within its power to cause them to stop.

139.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at 6593 ¶ 46.

**ONGOING CALLS AND HARASSMENT**

140.        Plaintiff Owens is still getting calls from unknown parties. She can't currently identify who is attempting to contact the prior owner of the phone number. She gets calls and text messages.

141.        The calls and text messages seem to never end for Plaintiff, no matter how many times she says, "Don't call, opt-out, hang up," or even files a Federal lawsuit to stop the harassment.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION
TCPA VIOLATIONS CALLS TO NUMBER ON
THE NATIONAL DO NOT CALL LIST**
(47 C.F.R. § 64.1200(c)(2))
(Against all Defendants)

142.        Plaintiff realleges all paragraphs above and incorporates them herein by reference.

143.        The call and text message were in violation of the TCPA regulation, specifically 47 C.F.R. 64.1200(c)(2), as the Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and Sheaks  caused the Doe Defendants' agent initiated telephone solicitation to a residential telephone subscriber who has registered her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitation that the Federal Government maintains

144.        The aforesaid violations of the TCPA were Willful and/or knowing, as is evidenced by the repeated number of calls.

145.        The foregoing acts and omissions of Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and/or their agents Defendant Sheaks and Doe Defendants, and/or other persons or entities acting with authority as agents on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff despite her number being on the National Do Not Call Registry.

146.     Defendant's actions and omission collectively violations were negligent, willful, or knowingly.

147.     Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

148.     At all times relevant to this complaint, Plaintiff had registered her residential telephone number on the national do-not-call registry maintained by the U.S. Government.

149.     Doe Defendants on behalf of Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and Defendant Sheaks called or caused Plaintiff's residential telephone line for solicitation purposes via text message and phone call on March 9, 2025, during the statutory period of the last four years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time.

150.     Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Doe Defendants have made many more violative calls to Plaintiff's residential telephone line on behalf of Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant PCAGC, Defendant Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

151.     The aforesaid violations of the TCPA were willful and/or knowing, as is evidenced by the repeated number of calls, as well as repetitive demands made by the Plaintiff to the callers not to call.

152.     Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of the National "Do-Not-Call" Registry rules promulgated thereunder. The Plaintiff may obtain relief in the form of injunctive relief or recover up to $500.00 for each violation, or both. If the court finds that the Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
## TCPA VIOLATIONS AUTODIALER CALLS
(47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. §64.1200(a)(1)(iii))
(Against all Defendants)

153.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

154.     The call and Text message violated the TCPA regulations, specifically 47 C.F.R. 64.1200(a)(3), as Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, and Defendant Sheaks agents-initiated telephone calls to a telephone line using an artificial or pre-recording voice to deliver a message without the express written consent of the party and there being no emergency.

155.     The aforesaid violation of the TCPA was willful and/or knowing that calls continued even after Plaintiff made the express request not to call demands to Defendants.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE TCPA – DO NOT CALL REQUEST IGNORED
(47 C.F.R. § 64.1200(d)(3))
(Against all Defendants)

156.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

157.    The call and Text message violated the TCPA implementing regulations, specifically 47 C.F.R. 64.1200(d)(3), as Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck and Defendant Sheaks or agents Doe Defendants initiated a telephone solicitation to a residential telephone subscriber who had previously made a do-not-call request.

158.    The aforesaid violations of the TCPA were willful and/or knowing, as evidenced by the repeated number of calls and the telephone call in which the telemarketer admitted that the Plaintiff's telephone number was on the do-not-call list.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF CIVIL CONSPIRACY
(Against all Defendants)

159.    Plaintiff realleges all paragraphs above and incorporates them herein by reference.

160.    Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants agreed among themselves to engage in a course of conduct involving a violation of 47 U.S.C. 227 and the TCPA regulations.

161.    Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Defendant Sheaks and Doe Defendants agreed to accomplish an unlawful purpose by calling people on the do-not-call list or by accomplishing a lawful object by unlawful means, causing damages to Plaintiff.

162.     Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants were working together and profited from violations of the TCPA.

163.    The Plaintiff has been damaged by acts committed by Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants pursuant to the civil conspiracy above.

164.    Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants conduct was intentional and premeditated, intended to unjustly benefit Defendants at the expense of Plaintiff, entitling Plaintiff to punitive damages in an amount sufficient to deter these Defendant PCAGC,  Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants and others similarly situated from repeating or committing the wrongful acts complained of herein.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE MHSSA
M.C.L. § 445.111a(5) & M.C.L. § 445.111b(1))
(Against all Defendants)

165.    Plaintiff realleges all paragraphs above and incorporates them herein by reference.

166.    The phone call and text message violated the MHSSA, specifically M.C.L. 445.111a(5), as Defendant PCAGC,  Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Defendant Sheaks by Doe Defendant agents made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list, and/or M.C.L. 445.111b(1), as Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants agents did not at the beginning of the telephone solicitation state their name and the full name of the organization on whose behalf the call was initiated to provide a telephone number of the organization on request.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE MTCCCA
M.C.L. § 484.125(2)(a)
(Against all Defendants)

167.    Plaintiff realleges all paragraphs above and incorporates them herein by reference.

168.     Call and text message violated the MTCCCA specifically M.C.L. § 484.125(2)(a), as Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendants' agent used a telephone line to contact a subscriber at the subscriber's residence to deliver a recorded message for the purpose of presenting commercial advertising and the subscriber has not requested, consented, permitted, or authorized the contact.

169.     The aforesaid violations of the MTCCCA were Willful and/or knowing, as evidenced by the repeated number of calls.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE MTCCCA
M.C.L. 484.125(2)(b)
(Against all Defendants)

170.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

171.     The call and text message violated the MTCCCA, specifically M.C.L. 484.125(2)(b).

172.     Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Mr. Keck, Defendant Sheaks and Doe Defendant's agent delivered or attempted to deliver intrastate commercial advertising by activating a feature to block the display of caller identification information that would otherwise be available to the subscriber. M.C.L. 484.125(2)(b).

173.     Defendant Sheaks was selling regulated real estate products in the state of Michigan.

174.     Defendant Sheaks Falsely Claimed that Ms. Owens consented or requested the call on Facebook.

175.     Defendant PCAGC is a Michigan Real Estate Company.

176.     Defendant City2Shore is a Michigan Real Estate Company.

177.     Defendant Mr. Frody is a licensed Michigan Real Estate Broker.

178.     Defendant Mrs. Frody is a licensed Michigan Real Estate Broker.

179.     Defendant Mr. Keck is a licensed Michigan Real Estate Broker.

180.     Defendant John Doe 1 is the husband of Ms. Sheaks.

181.     The aforesaid violations of the MTCCCA were Willful and/or knowing, as evidenced by the repeated number of calls.

### EIGHTH CAUSE OF ACTION
### INTRUSION UPON SECLUSION
(Against all Defendants)

182.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

183.     The Restatement of the Law, Second, Torts §652B defines intrusion upon seclusion as, "[o]ne who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy if the intrusion would be highly offensive to a reasonable person."

184.     According to findings by the FCC, the agency Congress vested with the authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

185.     Defendant intentionally interfered, physically or otherwise, with the solitude and seclusion of Plaintiff, namely by engaging in unlawful and intrusive communications.

186.     The defendant intentionally caused harm to Plaintiff's emotional well-being by engaging in harassing and unwanted phone calls and highly offensive conduct during a sales pitch, thereby intruding upon Plaintiff's rights to privacy.

187.     Plaintiff has a reasonable expectation of privacy in her solitude, seclusion, and/or private concerns and affairs.

188.     These intrusions and invasions against Plaintiff by Defendant PCAGC, Defendants

City2Shore REI, Defendant Mr. Frody, Mrs. Frody,  Mr. Keck, Defendant Sheaks and Doe

Defendants occurred in a way that would be highly offensive to a reasonable person in that position

189.     As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount

to be determined at trial from Defendant.


### NINENTH CAUSE OF ACTION
### CIVIL STALKING
(Against Defendant Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 )


190.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

191.     Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 actions

described above are prohibited by MCL  § 750.411(h) and constitute stalking as defined by Michigan

Law.

192.     Specifically, Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1

actions were willful and were directed toward Plaintiff Owens.

193.     Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 actions course

of conduct involved repeated and continuous phone and text harassment direct toward the Plaintiff

that caused her emotional distress and mental anguish.

194.     Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 action illegally

conducted an unlicensed professional investigation search of Plaintiff and her attorney using a third-

party software called Forwarn and shared that information with an unknown number of third parties

in violation of Ms. Owens rights.

195.     Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 actions

conduct has actually made Plaintiff Owens feel terrorized, threatened, frightened, intimidated,

harassed, and molested to the point that she was going to change her phone number to get away from the calls.

196.     Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 engaged in a series of unconsented contact with Plaintiff, including continuous phone messages and unwanted calls to her.

197.     Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 have targeted Ms. Owens with Conditioned harassment.

198.     As a direct and proximate result of Defendant Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, embarrassment, and other physical injuries.

199.     Under MCL § 600.2954, Plaintiff is entitled to receive compensation for the actual damages incurred as a result of Defendant Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 by and through their agents Doe Defendants' violations of MCL §750.411(h) as well as exemplary damages, costs, and attorney's fees incurred in bringing this action.

200.     All the actions of Defendants Mr. Frody, Mrs. Frody,  Keck, Ms. Sheaks, and John Doe 1 as described above, were with the express permission of the corporate defendant, a company owned and managed by Defendants.

201.     Defendant Keck has been engaged in sharing the plaintiff name, address, and phone number, placing it on a third-party website for any person with the link to discovery.

202.     Defendant Keck is seen on video sharing the plaintiff-protected information in violation of her rights.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs pray that her court enter a judgment for the Plaintiff and against the

Defendants, jointly and severally as for judgment against Defendants, and each of them, as follows:

1. A declaration that Defendant PCAGC, Defendants City2Shore REI, Defendant Mr. Frody,

   Mrs. Frody, and Defendant Sheaks knowingly and willfully violated the TCPA, MTCCA,

   and MHSSA as to Plaintiff.

2. A declaration that defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and

   Defendant Sheaks are liable jointly and severally for all damage as they engaged in

3. **Damages for violations of the TCPA alleged**

4. Below is the list of violations per count; however, the Plaintiff believes there were more calls

   during the statutory period and seeks damages for those calls as well, below are for the

   documented calls attached in the Exhibits to the Complaint.

   a. Cause of Action 1, (47 C.F.R. § 64.1200(c)(2))
      $500.00 per violation with 3 violations                          $1,500.00
   b. Cause of Action 2, (47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. §64.1200(a)(1)(iii))
      $500.00 per violation with 3 violations                          $1,500.00
   c. Cause of Action 3, (47 C.F.R. § 64.1200(d)(3))
      $500.00 per violation with 2 violations s                        $1,500.00

   **TOTAL TCPA ALLEGED VIOLATIONS**                                   $4,500.00

   A total of 6 violations at $500.00 per violation for statutory damages of $4,500.00,

   which Plaintiff asked to be trebled because the violations were willful and/or knowing,

   for a total possible damage award of $13,500.00

   The Sixth Circuit has held that a Plaintiff can recover under sections 227(b) and

   227(c) even if both violations arose from the same call. *Charvat v. NMP, LLC*, 656

   F.3d 440 (6th Cir. 2011)

5. Damages for violations of the MHSSA, M.C.L. § 445.111a(5) & M.C.L. § 445.111b(1))

   a. 3 violations at $250.00 per violation for a total of $750.00.

6. Damages for violations of the MTCCCA M.C.L. § 484.125(2)(a)

    a. 3 violations at $1,000 per violation for a total of $3,000.00

7. Damages for violations of the MTCCCA M.C.L. § 484.125(2)(b)

    a. 3 violations at $1,000.00 per violation for a total of $3,000.00.

**8. The cumulative total statutory damages claimed is $20,250.00**

9. For injunctive relief pursuant to 47 U.S.C. § 227(c)(5)(A);

10. Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at ensuring the prevention of Defendants from violating the TCPA in the future, including:

    a. Requiring Defendant  Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, Defendant Keck and Defendant Sheak to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of  Defendants City2Shore REI, Defendant Mr. Frody, Mrs. Frody, and Defendant Sheak and their agent/vendors/telemarketers Doe Defendants outbound calls – including calls originating from lead generators – to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis for no less than five years.

11. Damages, pursuant to 47 U.S.C. § 227(b)(3).

12. Damages, pursuant to MCL §600.2954.

13. Exemplary damages pursuant to MCL §600.2954(1).

14. Plaintiff demands transfer of the copyright of the video(s) published on https://bbemaildelivery.com/, which holds Plaintiff's Information and her attorney, along with other confidential client information of his real estate company.

15. Actual and punitive damages for the Defendant's intrusion upon Plaintiff's seclusion.

16. Actual and punitive damage for the Defendant stalking Plaintiff.

17. For attorney's fees pursuant to all applicable federal and state statutes.

    a.  MTCCCA M.C.L. § 484.125(5).

    b.  MHSSA M.C.L. § 445.111c.

    c.  MCL § 600.2954(1).

    d.  MCL § 600.2954(1).

18. For the cost of suit herein incurred and

19. Interest accruing from the date of filing until paid at the statutory rate;

20. For such further relief as the court deems just and proper.

### JURY DEMAND

The Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated March 24, 2024,                Lighthouse Litigation, PLLC

*Joshua S. Goodrich*

_____

By: Joshua S. Goodrich, J.D., LL.M. (P83197)
Attorney for Plaintiff
Lighthouse Litigation, PLLC
5208 W Saginaw Hwy, 81142
Lansing, MI 48908
Phone (269) 312-7435
Fax (646) 356-7044
Email: jsgoodrich@lighthouse-litigaiton.com

### Document Preservation Demand

Plaintiff demands that each Defendant preserve all records and direct all vendors, agents, and other third parties with relevant documents or data to do so, too. Please contact the attorneys listed here to discuss this.